UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　Plaintiff,<br><br>　　-against-<br><br>YINGHANG "JAMES" YANG and YUANBIAO CHEN,<br><br>　　　　　　　　Defendants. | **MEMORANDUM AND ORDER**<br><br>Case No. 20-CV-4427 (FB) (RER) |

*Appearances:*
*For the Plaintiff*:
MARY KAY DUNNING
Securities and Exchange Commission
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004

*For the Defendant*:
WILLIAM LOU
Chen Ran Law Group, P.C.
136-20 38th Ave., Suite 9J
Flushing, NY 11354

**BLOCK, Senior District Judge:**

　　Plaintiff Securities and Exchange Commission (the "SEC") brought this action against Defendants Yinghang "James" Yang ("Yang") and Yuanbiao Chen ("Chen"), alleging violations of Section 10(b) of the Securities and Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b-5 thereunder (17 C.F.R. § 240.10b-5). Yang pleaded guilty to criminal charges on December 17, 2020. On February 22, 2022, the Court entered a partial judgment against Chen based on his settlement agreement with the SEC (the "Consent Judgment"). In addition to enjoining Chen from future violations of securities laws, the Consent Judgment provided that Chen

1

would pay a civil penalty of between $123,000 and $663,000, to be determined by the Court. The SEC now moves for said penalty. For the reasons discussed below, the Court imposes a penalty of $246,000 on Chen.

## I.

The following facts, unless otherwise noted, are taken from the Complaint, which the Court must accept as true under the Consent Judgment. "When a defendant enters a consent judgment with the Commission and agrees not to challenge the details of the Commission's complaint, courts accept the allegations in the complaint to be true when deciding the Commission's subsequent motion for monetary relief." *SEC v. Juno Mother Earth Asset Mgmt., LLC*, No. 11 Civ. 01778, 2014 WL 1325912, at *3 (S.D.N.Y. Mar. 31, 2014).

Between June and October of 2019, Yang and Chen undertook an insider trading scheme using information Yang obtained from his job at a major financial firm that oversees prominent securities indexes. Yang and Chen traded stock options in 14 companies that Yang knew were soon to be added or dropped from indices, generating $912,082 in profits. The two men traded using a brokerage account opened and maintained by Chen in order to avoid the need for Yang to disclose trades to his employer. Chen lied about his experience trading stocks and options on his application for the brokerage account. Chen placed at least two of the 14 illegal trades, both shortly after speaking on the phone with Yang on August

1, 2019. Chen eventually distributed $221,000 produced by the trades to himself and $100,000 to Yang. The two halted the scheme once Chen's brokerage firm began asking him questions about the trades.

Yang never told Chen where he worked but did inform him that he got the trading information from a "company tool." Dkt. No. 45, Opp. at Ex. E. In several text messages to Yang, Chen expressed concern over the legality of their "suspicious" trading scheme and potential consequences that could befall them, including jail time and "a fine or something." *Id.* at Ex. E. Yang consulted an attorney about his potential legal liability in November 2019.

Chen, a high school friend of Yang's, owns and manages a sushi restaurant in Ridgewood, Queens and has earned between $12,000 and $18,000 annually from his job over the past three years. At the time of briefing, Chen held more than $175,000 in securities in a personal brokerage account, as well as multiple bank accounts with unknown balances to which Chen transferred funds from the insider trading scheme.

At oral argument on November 3, 2022, the parties also represented to the Court that Chen held cash and securities totaling at least $250,373.98 in brokerage accounts as of September 30, 2022.

## II.

Section 21(a) of the Insider Trading and Securities Fraud Enforcement Act of 1988 gives district courts discretion to impose civil penalties totaling up to "three times the profit gained or loss avoided as a result of" the violative trades. 15 U.S.C. § 78u-1. These harsh penalties "are designed to deter future violations of the securities laws and thereby further the goals of 'encouraging investor confidence, increasing the efficiency of financial markets, and promoting the stability of the securities industry.'" *Universal Express, Inc.*, 646 F. Supp. 2d 552, 567 (S.D.N.Y. 2009) (quoting *SEC v. Palmisano*, 135 F.3d 860, 866 (2d Cir. 1998)).

Civil penalties "shall be determined by the court in light of the facts and circumstances." 15 U.S.C. § 78u-1(a)(2); *SEC v. Conradt*, 696 F. App'x 46, 48 (2d Cir. 2017). Second Circuit courts examine a number of factors in determining the appropriate penalty, namely:

> (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

*S.E.C. v. Haligiannis*, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007); *Sec. & Exch. Comm'n v. Rajaratnam*, 918 F.3d 36, 44 (2d Cir. 2019) (using *Haligiannis* factors).

The SEC argues that these factors weigh in favor of imposing the maximum penalty of $663,000 against Chen, which would treble the distributions he made from the brokerage account to himself. Chen meanwhile argues for a lower penalty on the basis of his lack of understanding of the scheme, the fact that he considered turning himself in, his low net worth, and the fact that he transferred much of the funds in his account to Yang.

Here, the *Haligiannis* factors weigh in favor of an intermediate civil penalty. Chen is doubtlessly culpable in assisting an illegal trading scheme, though his involvement in it does not appear particularly egregious. Chen did not direct the scheme or misappropriate the information himself. However, he enabled it by establishing the brokerage account they traded from, acted on Yang's tips by placing illegal trades, and disbursed $220,000 in profits to himself. In regard to scienter, while Chen was not the mastermind of the scheme and likely did not know where Yang sourced the nonpublic information, he understood that what he was doing was wrong.

Next, Chen's behavior did not impose any extraordinary risk of loss to others outside of the generalized risk of delegitimizing securities markets presented by "trading on misappropriated information." *United States v. O'Hagan*, 521 U.S. 642, 659 (1997). Any resulting loss faced by Yang's employer is attributable to

5

Yang, not Chen, given Chen's ignorance of where Yang was employed or how exactly he was ascertaining the nonpublic information.

In regard to the fourth factor, Chen's activity in the trading scheme lasted more than three months, during which he made or assisted in making 14 illegal trades. While far from isolated, the scheme was not particularly protracted. *See United States Sec. & Exch. Comm'n v. Paulsen*, No. 18 CIV. 6718 (PGG), 2021 WL 5014886, at *3 (S.D.N.Y. Oct. 28, 2021) (deeming a scheme limited to one incident and a multi-month coverup "isolated.").

As to the final factor, the parties contest Chen's net worth and ability to pay a significant penalty. Chen's limited income and future earning ability suggest that the maximum civil penalty is inappropriate. However, his brokerage balance indicates that he is able to pay an intermediate penalty. *SEC v. Invest Better 2001*, No. 01 Civ. 11427, 2005 WL 2385452, at *6 (S.D.N.Y. May 4, 2005) ("while a defendant's finances may be taken into account in levying a civil penalty, a defendant's unsupported assertion that he lacks assets does not shield him from civil penalties"). Chen's large securities portfolio and likelihood to continue trading in the future also weighs in favor of a strong sanction that will deter him from illegal trading.

## III.

Having considered all of the circumstances, the Court concludes that a civil penalty of $246,000 is appropriate: double the minimum of the range from the Consent Judgment range and $25,000 more than the funds Cheng disbursed to himself.

By November 11, 2022, the SEC will submit a proposed judgment consistent with this Order. Defendant will submit any objections to the proposed judgment by November 18, 2022.

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
November 4, 2022